## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **RONALD PARSONS** | § | |
| | § | |
| **V.** | § | **1:14-CV-01122-LY** |
| | § | |
| **OFCR. ANGELO MARMARINOS, et al.** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the Defendants' Rule 12(b)(6) Motion to Dismiss and Alternative Request for a Rule 7(a) Reply to the Qualified Immunity Defense (Dkt. No. 7), and the Plaintiff's response (Dkt. No. 11). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I.  BACKGROUND

In this suit, Ronald Parsons complains of the alleged use of excessive force, unlawful seizure, and malicious prosecution.  Parsons claims that the Defendants' use of force violated his Fourth Amendment rights against the use of excessive force, as he claims the use of force was unreasonable. Parsons also claims that the malicious prosecution violated his Fourth and Fourteenth Amendment rights against warrantless and unjustified seizure. Both of these constitutional claims are brought under 42 U.S.C. § 1983.

The events giving rise to the complaint at issue took place on December 27, 2012, at Parsons's house in Round Rock, Texas, where he resided with his wife, Margaret Parsons.[1] On that day, Round Rock police officers were dispatched to Parsons's neighborhood at approximately 10:00

---

[1]These facts were taken from Parsons's complaint, Dkt. No. 1, and the Court takes them as true for purposes of this motion to dismiss.

P.M. to investigate a domestic disturbance.  The officers investigating the reported disturbance were Defendants Angelo Marmarinos and Mike S. Losoya. At some point after 10:00 P.M., Parsons awoke to use the restroom and noticed that the motion-detecting light on his front porch had been activated. When he went to investigate, Parsons observed the shadow of a man in the entryway of his home. Upon seeing the shadow, he slapped the door. After hitting the door, Parsons opened the door and yelled "stay away from my door." Parsons then closed the door, retrieved his licensed handgun, and called 911.

When Parsons called 911, the operator informed him that the police were outside of his home, and then the operator connected Parsons with one of the officers outside of his house.  Parsons states that he was connected with Defendant Jason Huf, who informed Parsons that the police needed to finish their investigation before they could leave. Huf asked Parsons to put his handgun away and come outside. Huf also informed Parsons that he would not be forced to lie on the ground when he went outside . Parsons complied with Huf's requests, returning the handgun to his closet and coming outside bare-footed. When he exited his home, some of the Defendants asked Parson to place his hands over his face. Parsons claims that, instead, he raised his hands over his head. The Defendants then allegedly asked Parsons to lie on the ground. Parsons claims that he refused to lie on the ground. The Defendants then asked Parsons to kneel on the ground. Parsons refused again, because, he says, he has bad knees. After Parsons refused to kneel on the ground, Defendant John Schultz allegedly discharged his taser on Parsons's chest. Parsons claims that after Schultz discharged his taser on Parsons's chest, Schultz and/or Defendants Paul Hernandez, Martin Flores, Angelo Marmarinos, D. M. Jennings, and/or other unnamed Defendants proceeded to use their tasers on Mr. Parsons's legs and punch, slap, and strike him with their knees. Parsons claims that, after Defendant Jennings tased

2

and assaulted him, Jennings placed handcuffs on Parsons so tightly that his wrists began to bleed. The Defendants then allegedly placed Parsons in the back of a squad car. While in the squad car, Parsons claims that the Defendants conducted a search of his home. Defendant Michael Scheffler allegedly verbally abused Parsons while the search was being conducted. It is unclear from Parsons's complaint whether the Defendants released Parsons after conducting their search or took him to the police station. As a result of the events described above, Parsons claims that he sustained injuries leading to physical pain and discomfort, permanent physical impairment, lost income, and emotional distress. Subsequently, a criminal case was brought against Parsons for resisting arrest, search, or transport. The case was decided in Parsons's favor on April 8, 2014. This suit was filed on December 20, 2014.  The Defendants now move to dismiss, arguing that Parsons had failed to state a claim, and, in the alternative, requesting a Rule 7(a) reply to their qualified immunity defense. Parsons filed a response on July 3, 2015.

## II.  MOTION TO DISMISS

The Defendants contend that Parsons has failed to state a claim and therefore seek dismissal under Rule 12(b)(6).[2]  They argue that Parsons has failed to plead sufficient facts to demonstrate that he suffered an injury or that the Defendants' use of force was excessive under the totality of the circumstances. The Defendants argue further that Parsons has failed to plead facts avoiding the

---

[2]A 12(b)(6) motion must be filed prior to the answer. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  This one was not.  However, 12(c) motions may be filed after the pleadings have closed.  Courts are permitted to construe an untimely 12(b)(6) motion as though it were a 12(c) motion, *id.*, and 12(c) motions are analyzed under the same standard as 12(b)(6) motions. *Johnson v. Teva Pharms., Inc.*, 758 F.3d 605, 610 (5th Cir. 2014). The Court will therefore review the Defendants' motion to dismiss as though it were a 12(c) motion.

Defendants' qualified immunity and that he has failed to plead facts sufficient to show that he was prosecuted without probable cause.

The Defendants' motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### A.     Excessive Force

Fifth Circuit precedent recognizes a cause of action under the Fourth Amendment for the use of excessive force while effectuating an arrest, investigatory stop, or other seizure. *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). In order to state a claim for excessive force in violation of the Constitution, the plaintiff must allege "(1) an injury,  (2) which resulted directly and only from a use of force that was clearly excessive, and

4

(3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

The Defendants challenge Parsons's assertion of an injury, arguing that he failed to make "specific claims of any form of injury." This argument is without merit. The Fifth Circuit has held somewhat minor injuries, such as a bruised thigh and a sore jaw, to be sufficient to state a significant injury in the excessive force context. *Hay v. Irving*, 893 F.2d 796 (5th Cir. 1990). While Parsons did not allege that a particular part of his body was injured, he does allege that he suffered "physical pain, physical discomfort, permanent physical impairment . . . and emotional distress." Dkt. No. 1 at ¶ 36. He also alleges that the handcuffs were placed on him so tightly that his wrists bled. *Id.* at ¶ 25. These allegations are sufficient to satisfy the first prong of an excessive force claim at the motion to dismiss stage. Parsons has also alleged that these injuries occurred as a result of the Defendants' use of force, satisfying the second prong.

The Defendants also challenge Parsons's claim that their use of force was excessive. According to the Defendants, Parsons's complaint contains insufficient details about his own behavior for a court to conclude that the use of force was excessive. Specifically, they contend that Fifth Circuit precedent permits officers to apply handcuffs too tightly without finding excessive force. These arguments all go to the reasonableness of the Defendants' use of force and involve the third prong of the excessive force determination.

An arrest or seizure necessarily entails "the right to use some degree of physical coercion . . . to effect it," however, the amount of force used must be proportional to the need for that force. *Graham*, 490 U.S. at 396. When assessing the third prong of an excessive force claim, courts must determine whether the use of force at issue was objectively reasonable. Objective reasonableness

is a balancing test that compares the amount of force used to the amount of force needed in the particular situation—the "facts and circumstances of the particular case" determine the amount of force that is constitutionally permissible. *Poole*, 691 F.3d at 628.  If the amount of force used is clearly beyond what is necessary to effectuate the arrest, investigatory stop, or seizure, then the amount of force is excessive and constitutionally infirm.  In determining the amount of force needed in a particular situation, courts consider a variety of factors, commonly called the *Graham* factors, which include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (citing *Graham*, 490 U.S. at 396).  Moreover, reasonableness is to be judged from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Officers are frequently placed into "tense, uncertain, and rapidly evolving" circumstances, and reasonableness must account for "the fact that police officers are often forced to make split-second decisions." *Id.*

In alleging the use of tasers, punches, slaps, and knee strikes in response to Parson's unwillingness to kneel down—particularly given that it does not appear from the Complaint that Parsons was a suspect of the Defendants' investigation—Parsons has stated sufficient factual material to raise the possibility that the Defendants' alleged conduct was unreasonable. Taking Parsons's factual allegations as true, the *Graham* factors do not support the alleged use of force. The Defendants were investigating a domestic disturbance, and it was not clear that a crime had even occurred.  If the facts in Parsons's complaint are true, Parsons did not pose an immediate threat of safety to the officers.  Parsons claims that he was not only greatly outnumbered, but he was also obviously unarmed, and was barefoot. *Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003) (construed

in *Hogan*, 722 F.3d at 735-36) (holding that officers' use of force was unreasonable, in part, because the plaintiff was outnumbered thirteen to one).  According to Parsons's version of the facts, there is also no sign that the he was a flight risk.  Moreover, Parsons claims that the Defendants failed to tailor their use of force to the level of resistance they encountered by using negotiation or physical coercion before resorting to the use of a taser.  *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) ("[A] reasonable jury could find that the degree of force used was not justified where the officer engaged in very little, if any, negotiation with the suspect and . . . immediately resorted to taser and nightstick.").  Although the Defendants argue that Parsons did not allege enough factual material about his own behavior to permit a judgment concerning the reasonableness of the officers' use of force, Parsons claims in his complaint that he was unarmed, complying with the officers' commands while he was inside his home, and simply unwilling to kneel because of bad knees.  Dkt. No. 1 at ¶¶ 21, 22, 24.  Parsons also claims that his passive resistance was predicated on officer promises that he would not be forced to lie on the ground.  *Id.* at ¶ 22. In alleging these facts about his own behavior, Parsons has provided enough factual information to raise the possibility that the Defendants' alleged use of force was unreasonable.  The combination of these factors, if proven true, could amount to a violation of Parsons's constitutional right to be free from the use of excessive force.  Because Parsons has alleged sufficient factual material to state a claim for relief that is plausible on its face, the motion to dismiss should be denied.

**B.    Qualified Immunity**

The Defendants also argue that Parsons has not stated a claim because he failed to plead facts demonstrating that they are not entitled to qualified immunity.  The doctrine of qualified immunity affords state actors protection against liability for damages "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Immunity in this sense means immunity from suit, not merely from liability.  *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 n.3 (5th Cir. 1992).  Moreover, "[q]ualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 174 (5th Cir. 1995).  Because the immunity is an immunity from suit, courts treat it as a threshold question that should be decided "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To rebut the qualified immunity defense, a plaintiff must show: (1) he has alleged a violation of a clearly established constitutional right; and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).  In the context of a motion to dismiss, a plaintiff must state facts in the complaint which, if proven, would overcome the qualified immunity defense. *Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir. 1994).

There is little question on the first issue.  Parsons has pled sufficient facts to demonstrate the possibility of a constitutional violation.  As noted, *supra*, officers are not permitted to resort immediately to punching, slapping, striking, or the use of a taser when arresting a compliant or passively resistant suspect, especially when the suspected criminal activity is relatively minor, the police officers greatly outnumber the plaintiff, and it is not clear that the plaintiff is even a suspect. With respect to the second prong, it has been clearly established for some time that the Fourth Amendment protects people from the use of excessive force. *See, e.g.*, *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008).  More particularly, it is clearly established that officers must weigh their use of force

8

against "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).   Furthermore, officers are only permitted to use "measured and ascending" responses to resistance by a suspect, which often requires using "physical skill, negotiation, or even commands" before resorting to the "taser and nightstick." *Newman*, 703 F.3d at 763. Parsons has pled sufficient facts to overcome qualified immunity at the motion to dismiss stage.

### C.   Malicious Prosecution

Fifth Circuit precedent recognizes a "constitutional" cause of action for malicious prosecution, which is defined as the "initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause."  *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). However, there is no "freestanding constitutional right to be free from malicious prosecution."  *Id.*  As the Fifth Circuit in *Castellano* made clear, the initiation of criminal proceedings, on its own, is not enough to amount to a constitutional violation. In order to have a malicious prosecution claim, "a claimant must allege that officials violated specific constitutional rights in connection with a malicious prosecution."  *Id.*  Up until *Castellano*, malicious prosecution was a claim that was essentially a "shorthand way of describing a kind of legitimate section 1983 claim." *Id.* at 952. Frequently, malicious prosecution claims contained "specific constitutional violations" that were "embedded, but floated unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution." *Id.* at 945. In order to combat these difficulties, the *Castellano* court insisted on "clarity in the identity of constitutional violations asserted." *Id.* Differently put, the claimant must allege with specificity "additional government acts" attending the

initiation of the criminal proceedings that "could give rise to claims of constitutional deprivation." *Id.* at 953.

Most commonly, the violation alleged in connection with malicious prosecution will be a violation of the Fourth Amendment's proscription of unreasonable seizures, usually in the form of pretrial deprivations of liberty.  Although the Fourth Amendment's protections are broad, they extend *only* to "pretrial events of a prosecution."  *Id.*  If the constitutional violation alleged occurred during or after trial, then the plaintiff will be unable to rely on the Fourth Amendment as support. *Id.* at 946 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  In these circumstances, the plaintiff will need to rely on the Fourteenth Amendment's guarantees of due process to ground the alleged constitutional violation.

Parsons has failed to plead facts sufficient to raise the possibility of a constitutional violation in connection with his alleged malicious prosecution. While Parsons claims that the Defendants deprived him of his "right to be free from warrantless and unjustified seizure," this statement is a legal conclusion that is not entitled to the presumption of truth at the motion to dismiss stage. In order to make out a valid malicious prosecution claim, Parsons would need to include facts amounting to the constitutional violation of unjustified seizure, such as statements averring pretrial detention in preparation for criminal proceedings. Without alleging such facts, Parsons has not pled a cognizable constitutional violation in connection with his malicious prosecution claim, as required by the Fifth Circuit.[3]

---

[3] Moreover, it is unclear whether Parsons is claiming only a Fourth Amendment violation in connection with his malicious prosecution claim, or if he is also intends to plead a Fourteenth Amendment violation.

While Parsons's complaint is insufficient to state a claim for malicious prosecution, he should be given leave to amend his complaint and plead with greater specificity. The Federal Rules were designed to permit "liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). "[U]nless there is substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* Thus, the Defendants' motion to dismiss should be denied without prejudice with respect to Parsons's malicious prosecution claim.  The District Court should then permit Parsons to replead his claim for malicious prosecution, and identifying what, if any, constitutional violations occurred.  The Defendants should then be given the opportunity to file a new motion to dismiss on this issue, should Parsons's complaint warrant it.

### III.  ALTERNATIVE REQUEST FOR A RULE 7(a) REPLY TO THE QUALIFIED IMMUNITY DEFENSE

With their motion to dismiss, the Defendants have filed an alternative request for a Rule 7(a) reply to the qualified immunity defense. The Defendants argue that, presuming Parsons alleged enough factual material to overcome the motion to dismiss, he has failed to allege factual material that is specific enough to overcome the Defendants' qualified immunity defense.

Within the Fifth Circuit, a Rule 7(a) reply is sometimes used to allow a decision to be made on the qualified immunity question when the complaint does not allege sufficient factual material to overcome the defense on its own.  *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc). Because the qualified immunity defense is designed to free governmental officials from the burdens of litigation, including protracted discovery, a Rule 7(a) reply avoids excessively intrusive and costly

11

discovery by allowing limited development of the factual record in order to ascertain the availability of the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). However, the Rule 7(a) reply is only appropriate where the plaintiff has alleged sufficient factual material to make out a constitutional violation and the district court is still unable to rule on the qualified immunity question. A district court "may, in its discretion, insist that a plaintiff file a reply," but it is unnecessary for the court to do so when the plaintiff has met his pleading burden. *Davalos v. Johns*, 460 F. App'x. 396, 397 (5th Cir. 2012). Parsons has met his pleading burden. He has alleged sufficient factual material to raise the possibility that the Defendants are not entitled to the qualified immunity defense at the motion to dismiss stage, obviating the need for a Rule 7(a) reply. The Defendants' alternative request for a Rule 7(a) reply should therefore be denied.

## V.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Defendants' Rule 12(b)(6) Motion to Dismiss and Alternative Request for a Rule 7(a) Reply (Dkt. No. 7) be **GRANTED IN PART** and **DENIED IN PART**. With respect to the § 1983 excessive force claims against the Defendants, the Court recommends that the motion be **DENIED**. With respect to the claim for malicious prosecution, the Court recommends that the motion be **DENIED WITHOUT PREJUDICE.** The Court recommends that the Plaintiff be **GRANTED LEAVE TO REPLEAD** this portion of his complaint, alleging with particularity what, if any, constitutional violation accompanied his alleged malicious prosecution. Finally, the Court recommends that the Defendants' Alternative Request for a Rule 7(a) Reply be **DENIED** because further factual allegations are unnecessary to determine the qualified immunity question at this time.

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. U. S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 31st day of August, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE